J-S06036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS HORTON | : | |
| | : | |
| Appellant | : | No. 90 EDA 2020 |

Appeal from the Order Entered December 20, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-731773-1993

BEFORE:  PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    Filed: April 22, 2021

Dennis Horton (Horton) appeals from the order of the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his third petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Horton also challenges the denial of his motion for DNA testing under 42 Pa.C.S. § 9543.1.  After review, we affirm.

**I.**

The PCRA court summarized the facts underlying Horton's convictions.

The evidence adduced at trial established that on May 31, 1993, [Horton], his brother Lee Horton ("Lee"), and a co-conspirator Robert Leaf ("Leaf") robbed Filito's Bar located at 5th Street and Hunting Park Avenue.  During the course of the robbery, [Horton], who was carrying a rifle, shot Samuel Alemo multiple times. Alemo later died from his gunshot wounds.  [Horton] also shot Luz Archella and her daughter Luz Martinez, injuring both.  Leaf

_____

[*] Retired Senior Judge assigned to the Superior Court.

brandished what appeared to be a black pistol while Lee took money from bar patrons. After leaving the bar, the three men fled in a blue automobile. A passerby was able to supply police with a description of the vehicle and a partial license plate number. A radio call was sent out, which included a description of the three assailants, their vehicle, and the last four digits of the license plate. A police officer observed the vehicle a short time later only a mile from the crime scene and placed [Horton] and his companions under arrest. Police recovered a .22 caliber semi-automatic rifle from the backseat of the car as well as a black pellet gun under the front passenger seat. Ballistics testing identified the rifle as the same weapon used during the robbery at Filito's. [Horton], Lee, and Leaf, who was wearing an orange hooded sweatshirt at the time of his arrest, were taken to the hospital where Martinez and her daughter, as well as another bar patron Miguel DeJesus, identified them as the robbers.

PCRA Court Opinion (PCO), 8/31/20, at 2.

In September 1994, at a joint trial with his brother Lee and Leaf, a jury convicted Horton of second-degree murder, aggravated assault, robbery, conspiracy and possession of an instrument of crime. In March 1995, the trial court sentenced him to life imprisonment for second-degree murder and a consecutive 18½ to 61 years' imprisonment on the remaining offenses.[1] This Court affirmed the judgment of sentence on direct appeal. **Commonwealth v. Horton**, 678 A.2d 828 (Pa. Super. 1996) (unpublished memorandum). Horton did not petition for allowance of appeal.

---

[1] Lee was convicted of second-degree murder and sentenced to life imprisonment, while Leaf was convicted of third-degree murder and sentenced to a term of years.

Horton filed his first PCRA petition in October 1996. After the PCRA court dismissed his petition, he appealed to this Court. We affirmed the dismissal in December 1998, and our Supreme Court denied Horton's petition for allowance of appeal. *Commonwealth v. Horton*, 736 A.2d 9 (Pa. Super. 1998) (unpublished memorandum), *appeal denied*, 738 A.2d 455 (Pa. 1999).

In January 2006, Horton filed his second PCRA petition. After a long procedural history, the PCRA court finally dismissed the petition in September 2010. We remanded, however, for the PCRA court to hold a hearing under *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). On remand, the PCRA court permitted Horton to represent himself on appeal. Once the matter returned to this Court, we affirmed the dismissal of the petition in April 2012. *Commonwealth v. Horton*, 48 A.3d 479 (Pa. Super. 2012) (unpublished memorandum).

On March 25, 2013, Horton filed the petition in this case. Horton at first alleged that he was entitled to relief under the United States Supreme Court's decisions in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Miller v. Alabama*, 567 U.S. 460 (2012). However, in a supplemental petition filed on April 11, 2014, Horton raised a new claim based on *Brady v. Maryland*, 373 U.S. 83 (1963). He alleged that he obtained exculpatory police documents through a civil suit against his former PCRA counsel. These documents included a "complaint fact record" that one of the detectives completed at the beginning stages of the investigation. In the detective's

offense summary, there is a notation stating, "Leaf is shooter." Beyond this notation, the detective did not give any information about the source of the identification. Nevertheless, because this conflicted with the Commonwealth's trial theory that he was the shooter, Horton alleged that this evidence met the **Brady** materiality standard for a new trial.[2]

On July 3, 2014, the PCRA court issued notice under Pa.R.Crim.P. 907 that it intended to dismiss Horton's petition. After filing *pro se* objections, Horton retained current PCRA counsel. On November 20, 2014, Horton filed a motion for DNA testing under 42 Pa.C.S. § 9543.1, requesting testing of the orange hoodie that Leaf was wearing when the police arrested him. Horton, however, did not include a sworn statement asserting that he was seeking DNA testing to prove actual innocence as required by Section 9543.1(c)(2)(i). To correct this oversight, Horton filed a supplement with his sworn statement.

Horton's case made little progress in the ensuing years. On June 3, 2015, the PCRA court issued its second Rule 907 notice of intent to dismiss. Despite no objections being filed, the PCRA court did not dismiss the petition. Eventually, Horton filed a "Motion for Entry of Final Order" on March 25, 2017. Then, on April 21, 2017, Horton responded to the second Rule 907 notice of

---

[2] Horton also alleged that his **Brady** claim was timely because he raised it within 60 days of obtaining the document in March 2014, and that his claim either qualified under the government interference or newly discovered evidence timeliness exceptions to the PCRA's one-year jurisdictional time bar.

intent to dismiss. Again, however, the PCRA court took no action, leading to the case being reassigned in March 2018.

With everything still pending, Horton filed another supplement on November 12, 2018. This time, Horton raised new *Brady* claims based on documents in the homicide investigation file that Horton obtained through the Philadelphia District Attorney Office's Conviction Integrity Unit. The new documents included two preliminary handwritten notes by the lead detective. Both notes listed everyone involved in the crime - including all defendants and victims - and included a notation next to Leaf's name, in parenthesis, that he was the "shooter."

Recognizing that the claim was untimely, Horton asserted the jurisdictional time-bar exceptions for interference by government officials and newly discovered facts. 42 Pa.C.S. § 9545(b)(1)(i), (ii). Horton represented that he received the notes on September 18, 2018, and that he filed his new claim within 60 days of learning about the documents' existence. As to the merits, Horton made the same argument he made with the "complaint fact record," asserting that the notes undermined the Commonwealth's theory at trial that he - and not Leaf - was the shooter. According to him, the newly discovered evidence showing that the police originally suspected Leaf of being the shooter was favorable material evidence entitling him to a new trial.

After the Commonwealth responded, the PCRA court issues its third and final Rule 907 notice, stating that Horton's petition was meritless and

untimely. This time, the PCRA court acted on its notice and dismissed Horton's petition on December 20, 2019. That same day, the PCRA court also issued an order denying Horton's motion for DNA testing.

After Horton timely appealed, the PCRA court explained its decision in its Pa.R.A.P. 1925(a) opinion.[3] Addressing Horton's ***Brady*** claims, the PCRA court clarified that it found the newly discovered evidence exception under Section 9545(b)(1)(ii) applicable.

> [The police documents] were previously unknown to [Horton] and it is unlikely that he would have been able to gain access to them any earlier with the exercise of due diligence as they were in the possession of the District Attorney's Office. As stated above, this analysis does not require any merits analysis of the underlying claims. It is sufficient that this evidence was new to [Horton] and he likely could not have ascertained them any earlier with the exercise of due diligence.

PCO at 9.

The PCRA court nevertheless found the petition meritless. Addressing the police documents, the PCRA court decided to analyze whether Horton could establish an after discovered evidence claim under 42 Pa.C.S. § 9545(a)(2)(iv), even though Horton styled his claims as ***Brady*** violations. Besides finding the notations as being merely impeachment evidence, the PCRA court found there was no prejudice.

> The police notations show that the police initially thought that Leaf was the shooter but that further investigation established [Horton] as the shooter. At the preliminary hearing, suppression hearing,

---

[3] The PCRA court did not order Horton to file a Pa.R.A.P. 1925(b) statement.

and at trial, three eyewitnesses positively identified [Horton], not Leaf, as the shooter. Simply showing the jury that the police originally thought Leaf was the shooter and changed their minds once the evidence showed otherwise would not likely compel a different verdict.

It is also important to note that whether Leaf or [Horton] was the shooter has no impact on [Horton's] culpability as he was convicted of second degree murder. Under Pennsylvania law, a "criminal homicide constitutes murder of the second degree when it is committed while defendant is engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2505(b). The evidence showed that [Horton] and Leaf, both armed, entered Filito's Bar with [Horton's] brother Lee. During the course of the robbery, Lee took money from a bar patron while Leaf held a gun to the patron's head. Meanwhile, [Horton] opened fire on two other bar patrons and murdered Alemo. He then fled the bar together with Leaf and Lee, and was arrested with them a short time later. Thus, even if the police notations contain contradictory information as to whether it was [Horton] or Leaf who shot the bar patrons, all evidence including the notations themselves, remain steadfast that [Horton] was present and committed the armed robbery alongside Lee and Leaf. Regardless who opened fire, [Horton] remains liable as an accomplice for any resulting deaths as well as any other crimes committed that night at Filito's bar during the robbery.

PCO at 10-11.

The PCRA court then turned to **Brady** and similarly found there was no prejudice, and even questioned if the evidence constituted favorable material evidence requiring disclosure.

[Horton] cannot prove that he was prejudiced by the withholding of these police notations. It appears from the notations that originally the police mistakenly believed that Leaf was the shooter. However, after further investigation, the police established that [Horton] was in fact the shooter. As discussed above, the prosecution is not obligated to turn over all police investigatory work in a case. Moreover, there is nothing to indicate that this was "favorable material evidence." Simply demonstrating that police first thought Leaf was the shooter and then concluded that

[Horton] was the shooter does not "put the whole case in such a different light as to undermine confidence in the verdict." Rather, it just shows that the police followed multiple leads, investigated all of the suspects, and based upon the evidence adduced, determined that [Horton] in fact fired the weapon, and not Leaf.

PCO at 12.

Finally, as to the DNA motion, the PCRA court determined that Horton had failed to make out a *prima facie* case that testing would produce exculpatory evidence proving actual innocence. In making this finding, the PCRA court summarized the evidence adduced at trial, emphasizing that three witnesses identified him as the shooter. Additionally, the PCRA court failed to see how the DNA testing of the orange hoodie sweatshirt worn by Leaf would exclude Horton as being at the robbery. On this point, the PCRA court noted that the jury convicted him of second-degree murder and, therefore, responsible as an accomplice for any resulting deaths during the robbery. As a result, like its analysis of the PCRA petition, the PCRA court found that the DNA testing would not produce a different result if it excluded Horton's DNA from the orange hoodie sweatshirt. PCO at 15-16.

## II.

In his first issue, Horton challenges the dismissal of his ***Brady*** claims based on the police documents identifying Leaf as the shooter in the bar.

We begin by examining the timeliness of Horton's petition, since the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded to address the merits of a petition. ***Commonwealth v. Bennett***,

930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of these exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

(b) Time for filing petition.--

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

When Horton first raised his **Brady** claim based on the "complaint fact record," any petition seeking to invoke one of these exceptions had to be filed within 60 days from when the claim could have been presented. That time limit, however, was later expanded to one year when the Legislature passed an amendment to Section 9545(b)(2) and changed the language to require that a petition "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). Because the amendment became

effective on December 24, 2018, the expanded time limit applies to any claims arising on or after December 24, 2017.

First, we find that the "complaint fact record" first raised in Horton's April 11, 2014 supplemental petition is not newly discovered evidence under Section 9545(b)(1)(ii). Horton's brother Lee tried to rely on this document in asserting an untimely **Brady** claim as part of his third PCRA petition. On appeal, however, a panel of this Court determined that the document was a matter of public record and did not constitute newly discovered evidence under the jurisdictional time bar under Section 9545(b)(1)(ii). **See Commonwealth v. Horton**, 2015 WL 754205, at *3 (Pa. Super. November 17, 2015) (unpublished memorandum). For this reason, we are bound to conclude the same.

That said, we find that the two handwritten notes qualify under the newly discovered evidence timeliness exception. To establish that exception, a petitioner must prove that "the facts upon which [his] claim is predicated were unknown to [him] and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S § 9545(b)(1)(ii). "Due diligence demands the petitioner to take reasonable steps to protect [his] own interests." **Commonwealth v. Shiloh**, 170 A.3d 553, 558 (Pa. Super. 2017) (citation omitted). As the PCRA court observed, Horton did not know about the handwritten notes and could not have discovered them earlier, since he obtained the notes in September 2018 only after seeking review with the

newly instituted Conviction Integrity Unit. As Horton's claim sounded in *Brady*, the focus is on the previously unknown handwritten notes, not on whether Leaf was the shooter. Thus, we will address the merits of Horton's petition limited to these handwritten notes.[4]

Turning to the merits, Horton first attacks the evidence for his convictions by criticizing the eyewitness identifications of himself and his brother. Besides citing a non-record report about the fallibility of eyewitness testimony, Horton goes through the witnesses and highlights their inconsistencies in their identification of the three defendants. *Id*. at 8-11. He does the same for the partial license plate description that led to the vehicle stop, suggesting that the police fabricated the information. To support this claim, he cites non-record studies and unrelated cases from Philadelphia. *Id*. at 12-14. He then goes into an oral statement that Leaf gave to the lead

_____

[4] Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record and whether its conclusions of law are free from legal error. *Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018). We consider the record in the light most favorable to the prevailing party in the PCRA court. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). In our review, we defer to the PCRA court's findings supported by the record, and we will not disturb those findings unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014). Additionally, "the decision whether to grant an evidentiary hearing is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Reid*, 99 A.3d 470, 485 (Pa. 2014) (citation omitted).

detective, as well as a jailhouse declaration of a cellmate who claimed that Leaf confessed to the murder. *Id*. at 14-15.[5]

Moving to relevant law, Horton emphasizes that materiality for a *Brady* violation does not require the petitioner to show that "disclosure of the suppressed evidence would have resulted ultimately in a defendant's acquittal." *Id*. at 17 (quoting *Kyles v. Whitely*, 514 U.S. 419, 434 (1995)). He contends that if the Commonwealth had turned over the handwritten notes, they would have shown that the Commonwealth's theory that he was the shooter was wrong. On the other hand, he asserts, even if the notes were wrong, then that would cast doubt on the integrity of the investigation. *Id*. at 17. He reasserts this point later in his argument when he argues that the PCRA court applied an incorrect, more-demanding standard for materiality than required under *Brady*. *Id*. at 21.

Under *Brady*, the prosecution's failure to disclose exculpatory evidence violates a defendant's Fourteenth Amendment due process rights. *Commonwealth v. Ly*, 980 A.2d 61, 75 (Pa. 2009). To establish a *Brady* violation, Horton needed to plead and prove that "(1) the prosecutor has

---

[5] This Court considered this jailhouse confession in connection with Horton's second petition. There, we held that the alleged confession constituted clear hearsay and would not qualify under the statement against the penal interest exception. *See Commonwealth v. Horton*, 2881 EDA 2010, at *11-12 (Pa. Super. April 17, 2012) (unpublished memorandum). Consistent with this holding, we attach no weight to this inadmissible evidence. We do the same for Leaf's oral statement, which, as Horton notes, was not admitted at trial.

suppressed the evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." *Commonwealth v. Carson*, 913 A.2d 220, 244 (Pa. 2006).

In assessing the prejudice under *Brady*, favorable evidence is material and constitutional error results from its suppression by the government if there is a reasonable probability that, had the Commonwealth disclosed the evidence, the result of the proceeding would have been different. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013). Reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. In determining if the petitioner has shown a reasonable probability of a different outcome, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Id*. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002).

Putting aside whether Horton's claim satisfies the first two elements of *Brady*, we agree with the PCRA court's conclusion that Horton could not show prejudice. As summarized above, his argument on this issue seems to be that this was a closely contested case in which the handwritten notes would have

tipped the scales in his favor if they had been presented to the jury. It would not have done so.

First, despite being identified as the shooter, the jury convicted Horton of second-degree murder. **See** 18 Pa.C.S. § 2502(a)(2) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."). Regardless of the shooter, the evidence, including the detective's notes themselves, is overwhelmingly consistent that Horton participated in the robbery with his brother Lee and Leaf. **See** PCO at 7. Like the PCRA court, we fail to see how these preliminary investigation notes detract from the evidence that Horton was guilty of second-degree murder. Whether Leaf or Horton was the shooter had little or no connection with the jury's finding that Horton, at the very least, participated in the robbery.

Horton tries to counter this by arguing that the inconsistency about the shooters casts the entire investigation in doubt. We disagree. As we have discussed, the handwritten notes merely have a notation of "shooter" next to Leaf's name - no information is given about when the detective made this notation or who was the source for this information. As Horton acknowledges, the lead detective presumably got the information from one of the witnesses. Yet as he recounts in his brief, there were inconsistencies between not only the witnesses' testimony, but their own identifications themselves. These were developed and raised at trial.

For that reason, we find the PCRA court did not err in finding that Horton was not prejudiced by not having the lead detective's preliminary investigation notes. Besides not undermining his second-degree murder conviction, the notes merely suggest a possible inconsistency that, in any event, was raised at trial. Thus, no relief is due.[6]

**III.**

Horton also contends the PCRA court erred in denying his motion for DNA testing under Section 9543.1. In a limited argument, he alleges that the PCRA court "failed to take account of [his] arguments that the identifications were deeply flawed," as well as "the impact of the newly discovered evidence showing that Leaf was the shooter." Horton's Brief at 24.[7]

---

[6] Horton also argues that he is entitled to relief under § 9545(a)(2)(vi), presumably because the PCRA court analyzed whether the handwritten notes constituted after-discovered evidence warranting a new trial. In his November 16, 2018 amendment, Horton asserted **Brady** as the basis for relief; he never claimed that he is entitled to relief under § 9545(a)(2)(vi) or that the handwritten notes constitute after-discovered evidence. As a result, Horton has waived this claim. "Any claim not raised in the PCRA petition is waived and not cognizable on appeal." **Commonwealth v. Washington**, 927 A.2d 586, 601 (Pa. 2007); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[7] Our standard of review here is as follows:

> Generally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in

The post-conviction DNA testing statute permits "[a]n individual convicted of a criminal offense in a court of this Commonwealth" to apply by "written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction."  42 Pa.C.S. § 9543.1(a)(1).  "DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice."  42 Pa.C.S. § 9543.1(a)(4).

The statute also provides:

(c) Requirements.--In any motion under subsection (a), under penalty of perjury, the applicant shall:

***

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted[.]

***

---

Section 9543.1.  We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*Commonwealth v. Williams*, 35 A.3d 44, 47 (Pa. Super. 2011).

(d) Order.—

\*\*\*

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S. § 9543.1(c)(3)(ii) and (d)(2)(1).

In order for new evidence resulting from DNA testing to establish "actual innocence," it "must make it 'more likely than not that no reasonable juror would have found [the appellant] guilty beyond a reasonable doubt.'  Thus, this standard requires a reviewing court 'to make a probabilistic determination about what reasonable, properly instructed jurors would do,' if presented with the new evidence."  Accordingly, the PCRA court must "review not only the motion [for DNA testing], but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence that would establish ... actual innocence."

**Williams**, 35 A.3d at 50 (internal quotations and citations omitted).

As noted above, the PCRA court explained its denial of Horton's DNA motion in its Pa.R.A.P. 1925(a) opinion.  Besides reiterating the points from its **Brady** materiality discussion, the PCRA court added the following:

[Horton] argues that the shooter at Filito's was described as wearing an orange hooded sweatshirt.  When Leaf was arrested, he was wearing an orange hooded sweatshirt.  However, three eyewitnesses identified [Horton], not Leaf, as the man who shot Alemo.  [Horton] argues that the sweatshirt should be tested for DNA and that the lack of his DNA on the sweatshirt would exclude him as the shooter.  Indeed, he goes so far as to argue that this would prove he was not even present at the scene of the crime.

- 17 -

This is without merit as the absence of his DNA on the sweatshirt would not exculpate him in any way. The lack of [Horton's] DNA material on the sweatshirt, or on any other clothing or evidence recovered from that night, would neither prove nor disprove his involvement in the robbery.

\*\*\*

Moreover, as discussed earlier, [Horton] was convicted of second degree murder and therefore was responsible as an accomplice for any resulting deaths as well as any other crimes committed that night at Filito's bar during the robbery. The evidence adduced at trial showed that he, Leaf, and Lee planned and executed a robbery together at Filito's bar and that Samuel Alemo was shot and killed as a result of that robbery. Thus, whether he was the actual shooter, as he argues DNA evidence would show, would not exculpate him in anyway as he is culpable for all crimes committed in connection with the robbery at Filito's. Since there is no reasonable possibility that DNA testing would produce exculpatory evidence that would establish [Horton's] actual innocence, this Court properly denied his motion for DNA testing.

PCO at 15-16.

Despite this analysis specifically addressing the orange hoodie sweatshirt that he sought testing of, Horton fails to explain why the PCRA court's reasoning was flawed or misconstrued his request. Instead, as noted above, Horton baldly asserts that he established a *prima facie* case of actual innocence warranting DNA testing, proving citation to neither the trial record nor analogous case law to build the argument that the PCRA court erred in denying his motion. This lack of development aside, we find no error in the PCRA court's analysis, as it largely mirrors many of the same points that we agreed with about Horton's PCRA petition. We also agree with the PCRA court's discussion about the subject of the requested testing - the orange

hoodie sweatshirt - and how DNA testing would not establish actual innocence even if it came back as excluding Horton. For these reasons, we find Horton's issue lacks merit and is not entitled to relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/22/21*